FILED by _____ D.C.

ELECTRONIC

**SEP 03, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. <u>09-CR-20523-CR-SEITZ(s)</u>

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 1028A
18 U.S.C. § 1030(b) and (c)(2)(b)(i)
18 U.S.C. § 982
18 U.S.C. § 2

UNITED STATES OF AMERICA

vs.

MICHEL DE JESUS HUARTE,
RAMON FONSECA,
ALYD DAZZA,
RICCO DAZZA,
DAYRON PORRATA,
WALLY PROENZA,
ORLIN TAMAYO QUINONEZ, and
JUAN CARRALERO,

   Defendants.
_____/

## <u>SUPERSEDING INDICTMENT</u>

The Grand Jury charges that:

### <u>GENERAL ALLEGATIONS</u>

At all times relevant to this Superseding Indictment:

### <u>The Medicare Program</u>

1.     The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.      The Medicare program was divided into different "parts." "Part A" of the Medicare program covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. "Part B" of the Medicare program covered, among other things, medical services provided by physicians, medical clinics, and other qualified health care providers, as well as medications rendered "incident to" such services. The Medicare Advantage Program, formerly known as "Part C" or "Medicare+Choice," is described in further detail below.

4.      Medicare Part B was administered in Florida by First Coast Service Options, a company that contracted with CMS to receive, adjudicate, process, and pay certain Part B claims.

5.      Payments under the Medicare Program were often made directly to the physician, medical clinic, or other qualified provider of the medical goods or services, rather than to the beneficiary. This occurred when the provider accepted assignment of the right to payment from the beneficiary. In that case, the provider submitted the claim to Medicare for payment, either directly or through a billing company.

6.      Physicians, medical clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who was issued a Medicare provider number was able to file bills, known as "claims," with Medicare to obtain reimbursement for services provided to beneficiaries. The claim form was required to contain certain important information, including: (a) the Medicare beneficiary's

2

name and Health Insurance Claim Number ("HICN"); (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). The claim form could be submitted in hard copy or electronically.

7.      When a claim was submitted to Medicare, the provider certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare program. The provider further certified that the services being billed were medically necessary and were in fact provided as billed.

8.      Pursuant to federal statutes and regulations, Medicare only paid for health care benefits, items or other services that were medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider.

### The Medicare Advantage Program

9.      The Medicare Advantage Program, formerly known as "Part C" or "Medicare+Choice," provided Medicare beneficiaries with the option to receive their Medicare benefits through a wide variety of private managed care plans, including health maintenance organizations ("HMOs"), provider sponsored organizations ("PSOs"), preferred provider organizations ("PPOs"), and private fee-for-service plans ("PFFS"), rather than through the original Medicare program (Parts A and B).

10.      Private health insurance companies offering Medicare Advantage plans are required to provide Medicare beneficiaries with the same services and supplies offered under

3

Parts A and B of Medicare. To be eligible to enroll in a Medicare Advantage plan, a person must be entitled to benefits under Part A and Part B of the Medicare Program.

11.     A number of companies including Coventry Health Care, Inc. ("Coventry"); Humana Inc. ("Humana"); WellPoint, Inc. ("Wellpoint"); Healthnet, Inc. ("Healthnet"); Sterling Life Insurance Company ("Sterling"); Universal American Corp. ("Universal"); Aetna Health ("Aetna"); TRICARE Management Activity ("Tricare"); Marquette National Life Insurance Company ("Marquette"); Pyramid Life Insurance Company ("Pyramid"), WellCare Health Plans, Inc. ("WellCare") and their related subsidiaries and affiliates contracted with CMS to provide managed care to Medicare Advantage beneficiaries through various plans.

12.     These entities, through their respective Medicare Advantage programs, often made payments directly to physicians, medical clinics, or other health care providers, rather than to the Medicare Advantage beneficiary that received the health care benefits, items, and services. This occurred when the provider accepted assignment of the right to payment from the beneficiary.

13.     To obtain payment for treatment or services provided to a beneficiary enrolled in a Medicare Advantage plan, physicians, medical clinics, and other health care providers had to submit itemized claim forms to the beneficiary's Medicare Advantage plan. The claim forms were typically submitted electronically via the internet. The claim form required certain important information, including: (a) the Medicare Advantage beneficiary's name and HICN or other identification number; (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or

4

National Provider Identifier ("NPI").

14.     When a provider submitted a claim form to a Medicare Advantage program, the provider party certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare program. The submitting party also certified that the services being billed were medically necessary and were in fact provided as billed.

15.     The private health insurance companies offering Medicare Advantage plans are paid a fixed rate per beneficiary per month by the Medicare program, regardless of the actual number or type of services the beneficiary receives.   These payments by Medicare to the insurance companies are known as "capitation" payments.   Thus, every month, CMS paid the health insurance companies a pre-determined amount for each beneficiary who was enrolled in a Medicare Advantage plan, regardless of whether or not the beneficiary utilized the plan's services that month.   CMS determined the per-patient capitation amount using actuarial tables, based on a variety of factors, including the beneficiary's age, sex, severity of illness, and county of residence.    CMS adjusted the capitation rates annually, taking into account each patient's previous illness diagnoses and treatments.   Beneficiaries with more illnesses or more serious conditions would rate a higher capitation payment than healthier beneficiaries.

### Corporations

16.     Zigma Medical Care, Inc. ("Zigma Medical") was a Florida corporation with a place of business in Miami-Dade County.   It was purportedly a medical clinic that provided Medicare beneficiaries with various medical items and services, including injection treatments, *i.e.*, treatments involving the insertion of a syringe into the patient's arm, and intravenous infusion treatments, *i.e.*, treatments involving the insertion of a needle into a patient's vein to administer

5

specialized medications typically prescribed for patients with cancer, Human Immunodeficiency Virus ("HIV"), or Acquired Immune Deficiency Syndrome ("AIDS").

17.     Tender Loving Care Medical Center, Inc. ("Tender Loving Care") was a Florida corporation with a place of business in Miami-Dade County.  It was purportedly a medical clinic that provided Medicare beneficiaries with various medical items and services, including injection treatments and intravenous infusion treatments to administer specialized medications typically prescribed for patients with cancer, HIV, or AIDS.

18.     Professional Medical Health, Inc. ("Professional Medical") was a Florida corporation with a place of business in Miami-Dade County.  It was purportedly a medical clinic that provided Medicare beneficiaries with various medical items and services, including injection treatments and intravenous infusion treatments to administer specialized medications typically prescribed for patients with arthritis or cancer.

19.     Metro Med Care, Inc. ("Metro Med") was a Florida corporation with a principal place of business in Miami-Dade County.  It was purportedly a medical clinic that provided Medicare beneficiaries with various medical items and services, including injection treatments and intravenous infusion treatments to administer medications typically prescribed for patients with arthritis or cancer.

20.     San Diego Medical & Rehab Center Inc. ("San Diego Medical") was a Florida corporation with a principal place of business in Miami-Dade County.  It was purportedly a medical clinic that provided Medicare beneficiaries with various medical items and services, including pain management services and treatment for varicose veins.

21.     Eulogia's Diagnostic Medical Center, Inc. ("Eulogia Diagnostic") was a Florida corporation with a principal place of business in Miami-Dade County.  It was purportedly a

6

medical clinic that provided Medicare beneficiaries with various medical items and services, including pain management services and treatment for varicose veins.

22.    Magestic Group Service, Inc. ("Magestic Service") was a South Carolina corporation that purportedly maintained a place of business in Rock Hill, South Carolina. It was purportedly a medical clinic that provided Medicare Advantage beneficiaries with various medical items and services, including injection treatments and intravenous infusion treatments to administer specialized medications typically prescribed for patients with cancer, HIV or AIDS.

23.    Ziallet Services, Inc. ("Ziallet Services") was a North Carolina corporation that purportedly maintained a registered office in Huntersville, North Carolina. It was purportedly a medical clinic that provided Medicare Advantage beneficiaries with various medical items and services, including injection treatments and intravenous infusion treatments to administer specialized medications typically prescribed for patients with cancer, HIV or AIDS.

24.    First Choice Group Services Inc. ("First Choice") was a Georgia corporation with a principal office address in Macon, Georgia.   It was purportedly a medical clinic that provided Medicare beneficiaries and Medicare Advantage beneficiaries with various medical items and services, including injection treatments and intravenous infusion treatments to administer specialized medications typically prescribed for patients with cancer, HIV or AIDS.

25.    Bibb Group Services Inc. ("Bibb Services") was a Georgia corporation with a principal office address in Warner Robbins, Georgia.   It was purportedly a medical clinic that provided Medicare beneficiaries and Medicare Advantage beneficiaries with various medical items and services, including injection treatments and intravenous infusion treatments to administer specialized medications typically prescribed for patients with cancer, HIV or AIDS.

26.    Comprehensive Medical Care Services, Inc. ("Comprehensive Medical") was a

7

Georgia corporation with a principal office address in Woodstock, Georgia. It was purportedly a medical clinic that provided Medicare Advantage beneficiaries with various medical items and services, including injection treatments and intravenous infusion treatments to administer specialized medications typically prescribed for patients with cancer, HIV or AIDS.

27.     Best Care Solutions, Corp. ("Best Care") was a Georgia corporation with a principal office address in Brunswick, Georgia. It was purportedly a medical clinic that provided Medicare Advantage beneficiaries with various medical items and services, including injection treatments and intravenous infusion treatments to administer specialized medications typically prescribed for patients with cancer, HIV or AIDS.

28.     Fast Cure Company ("Fast Cure") was a Louisiana corporation with a mailing address in Metairie, Louisiana.  It was purportedly a medical clinic that provided Medicare Advantage beneficiaries with various medical items and services, including injection treatments and intravenous infusion treatments to administer specialized medications typically prescribed for patients with cancer, HIV or AIDS.

29.     Best Cure Company LLC ("Best Cure") was a Louisiana corporation with a mailing address in New Orleans, Louisiana. It was purportedly a medical clinic that provided Medicare Advantage beneficiaries with various medical items and services, including injection treatments and intravenous infusion treatments to administer specialized medications typically prescribed for patients with cancer, HIV or AIDS.

30.     Universal Moneyfast, Inc. ("Universal Moneyfast") was a Florida corporation with a place of business in Miami-Dade County. Universal MoneyFast was purportedly engaged in business to provide check cashing, money transfer, and other services to the general public.

31.     Rapid Trans Solutions Inc. ("Rapid Trans Solutions") was a Florida corporation

that purportedly operated from a single-family residence in Miami-Dade County. Rapid Trans Solutions was purportedly engaged in business to provide check cashing, money transfer, and other services to the general public.

32.    Social Service Coordinators, Inc. ("SSC") was a Florida corporation with a business office in Miami Lakes, Florida.   SSC was engaged in business, among other things, to solicit and educate persons enrolled in Medicare Advantage programs, and to help determine their eligibility for supplemental social service programs offered by federal, state, and local entities.  To execute its business functions, SSC maintained a computer server affecting interstate commerce and communications.   SSC's server stored, among other things, the personal identifying information of thousands of Medicare-Advantage beneficiaries living throughout the United States, including their names, addresses, social security numbers, and Health Insurance Claim Numbers ("HICN").

### The Defendants and Their Conspirators

33.    Defendant **MICHEL DE JESUS HUARTE**, a resident of Miami-Dade County, together with various conspirators, operated and controlled Zigma Medical, Tender Loving Care, Professional Medical, Metro Med, San Diego Medical, Eulogia Diagnostic, Magestic Service, Ziallet Services, First Choice, Bibb Services, Comprehensive Medical, Best Care, Fast Cure, and Best Cure.

34.    Defendant **RAMON FONSECA**, a resident of Miami-Dade County, together with MICHEL DE JESUS HUARTE and other conspirators, operated and controlled Magestic Service, Ziallet Services, First Choice, Bibb Services, Comprehensive Medical, Best Care, Fast Cure, and Best Cure.

35.    Vicente Gonzalez, a resident of Miami-Dade County, formed, operated, and

9

managed Fast Cure and Best Cure together with **MICHEL DE JESUS HUARTE** and **RAMON FONSECA**.

36.     Defendant **ALYD DAZZA**, a resident of Broward County, operated and controlled Universal Moneyfast and Rapid Trans Solutions. **DAZZA**, together with **MICHEL DE JESUS HUARTE**, **RAMON FONSECA**, and other conspirators, also operated and controlled Magestic Service and Ziallet Services.

37.     Monika Blacio, a resident of Miami-Dade County, operated and controlled Rapid Trans Solutions together with ALYD DAZZA. Blacio also incorporated, operated, and managed Ziallet Services and Magestic Service together with **MICHEL DE JESUS HUARTE**, **RAMON FONSECA**, **RICCO DAZZA** and other conspirators.

38.     Defendant **RICCO DAZZA**, a resident of Miami-Dade County, operated and controlled Rapid Trans Solutions together with **ALYD DAZZA** and Monika Blacio. **RICCO DAZZA** also incorporated, operated, and managed Ziallet Services and Magestic Service together with **MICHEL DE JESUS HUARTE**, **RAMON FONSECA**, Monika Blacio, and other conspirators.

39.     Defendant **WALLY PROENZA**, a resident of Miami-Dade County, was an Outreach Supervisor at SSC. In that capacity, **PROENZA** supervised employees working at SSC's call center, and was responsible for providing customer service to Medicare beneficiaries. **PROENZA** was assigned a computer terminal for the purpose of executing his job duties and, through said computer terminal, had access to a server containing the personal identifying information of Medicare Advantage beneficiaries throughout the United States. **PROENZA** was not authorized to sell of transfer the beneficiaries' personal identifying information; such information was to be kept strictly confidential and used exclusively for SSC's company

10

business.

40.     Defendant **DAYRON PORRATA**, a resident of Miami-Dade County, was an Outreach Coordinator at SSC from approximately July 15, 2002 until approximately December 20, 2007.  During his employment at SSC, **PORRATA** was assigned a computer terminal for the purpose of executing his job duties and, through said computer terminal, had access to a server containing the personal identifying information of Medicare Advantage beneficiaries throughout the United States.    **PORRATA** was not authorized to sell or transfer the beneficiaries' personal identifying information, either before or after his employment at SSC. After leaving SSC, **PORRATA** was not authorized to access SSC computers, or the data stored therein, for any purpose.

41.     Defendant **ORLIN TAMAYO QUINONEZ** served as the titular owner of Ziallet Services and Magestic Service.  **QUINONEZ** also assisted **MICHEL DE JESUS HUARTE, RAMON FONSECA, ALYD DAZZA,** Monika Blacio, and **RICCO DAZZA** with the incorporation, operation, and management of Ziallet Services and Magestic Service.

42.     Defendant **JUAN CARRALERO** served as the Chief Executive Officer, Registered Agent, and Secretary of Comprehensive Medical and Best Care.  **CARRALERO** incorporated, operated, and managed Comprehensive Medical and Best Care together with **MICHEL DE JESUS HUARTE, RAMON FONSECA,** and other conspirators.

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.     Paragraphs 1 through 8, 16 through 21, and 33 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

11

2.    From at least as early as August 2005, and continuing through in or around 2007, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

## MICHEL DE JESUS HUARTE,

did knowingly and willfully combine, conspire, confederate and agree with I.M., E.R., M.P., Madelin Barbara Machado, M.R., D.G., G.M., C.C., J.H., D.S., and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

## PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the conspiracy for the defendant and his conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; (c) concealing the receipt of the fraud proceeds; and (d) diverting the fraud proceeds for their personal use and benefit.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

4.    **MICHEL DE JESUS HUARTE** and his conspirators obtained ownership and control of Zigma Medical, Tender Loving Care, Professional Medical, Metro Med, San Diego Medical, and Eulogia Diagnostic.

12

5.      To conceal his ownership and control, **MICHEL DE JESUS HUARTE**, directly and through conspirators, recruited nominee or "straw" owners to sign the Articles of Incorporation, bank records, and other business documents for Zigma Medical, Tender Loving Care, Professional Medical, Metro Med, San Diego Medical, and Eulogia Diagnostic.

6.      **MICHEL DE JESUS HUARTE**, directly and through conspirators, made large cash payments to the "straw" owners in return for their services, and with the understanding that the "straw" owners would flee to Cuba to avoid law enforcement detection or capture.

7.      **MICHEL DE JESUS HUARTE** and his conspirators purchased the names and other personal identifying information of numerous Medicare beneficiaries without their knowledge or permission, thereby facilitating the submission of false and fraudulent claims to the Medicare program.

8.      **MICHEL DE JESUS HUARTE** and his conspirators misappropriated the names and UPINs of numerous physicians, thereby facilitating the submission of false and fraudulent claims to the Medicare program.

9.      **MICHEL DE JESUS HUARTE** recruited a conspirator to prepare and submit false and fraudulent claims on behalf of Zigma Medical, Tender Loving Care, Professional Medical, Metro Med, San Diego Medical, and Eulogia Diagnostic.

10.     **MICHEL DE JESUS HUARTE** and his conspirators submitted and caused the submission of false and fraudulent claims to Medicare on behalf of the medical clinics indicated below, seeking at least the amounts indicated below as reimbursement for injection treatments, intravenous infusion treatments, and other medical items and services which were neither ordered by a physician nor provided to a beneficiary as claimed.  Based on these false and fraudulent claims, Medicare paid the medical clinics at least the following amounts:

13

| Medical Clinic | Approximate Amount Submitted to Medicare | Approximate Amount Paid By Medicare |
|---|---|---|
| Zigma Medical | $9,314,704 | $4,507,167 |
| Tender Loving Care | $6,370,397 | $1,774,200 |
| Professional Medical | $12,940,086 | $6,550,058 |
| Metro Med | $7,824,527 | $2,689,019 |
| San Diego Medical | $8,212,860 | $4,421,194 |
| Eulogia Diagnostic | $7,127,926 | $1,571,744 |

11.     **MICHEL DE JESUS HUARTE** and his conspirators transferred and disbursed, and caused the transfer and disbursement of, the Medicare fraud proceeds to numerous shell corporations controlled by conspirators.

12.     Conspirators would deposit the Medicare fraud proceeds into the bank accounts of their respective shell corporations, and subsequently deliver cash to **MICHEL DE JESUS HUARTE** and his conspirators withdrawn from the bank accounts of the shell corporations.

All in violation of Title 18, United States Code, Section 1349.

**COUNT 2**
**Conspiracy to Commit Health Care Fraud**
**(18 U.S.C. § 1349)**

1.     Paragraphs 1 through 3, 9 through 15, and 22 through 42 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2.     From at least as early as September 2007, and continuing through in or around May 2009, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

14

MICHEL DE JESUS HUARTE,
RAMON FONSECA,
ALYD DAZZA,
RICCO DAZZA,
DAYRON PORRATA,
ORLIN TAMAYO QUINONEZ, and
JUAN CARRALERO,

did knowingly and willfully combine, conspire, confederate and agree with each other and others

known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that

is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce,

as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by

means of materially false and fraudulent pretenses, representations, and promises, money and

property owned by, and under the custody and control of, said health care benefit program, in

connection with the delivery of and payment for health care benefits, items, and services.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendants and their conspirators to

unlawfully enrich themselves by, among other things: (a) submitting and causing the submission

of false and fraudulent claims to Medicare and Medicare Advantage plans; (b) concealing the

submission of false and fraudulent claims to Medicare and Medicare Advantage plans; (c)

concealing the receipt of the fraud proceeds; and (d) diverting the fraud proceeds for their personal

use and benefit.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their conspirators sought to

accomplish the purpose of the conspiracy included, among others, the following:

4.      **MICHEL DE JESUS HUARTE, RAMON FONSECA**, Vicente Gonzalez and

their conspirators agreed to open multiple medical clinics in Louisiana to defraud Medicare.

15

5.     Vicente Gonzalez, based on his understanding and agreement with **MICHEL DE JESUS HUARTE, RAMON FONSECA** and others, relocated from Miami-Dade County to New Orleans to incorporate and manage medical clinics.

6.     Vicente Gonzalez, based on his understanding and agreement with **MICHEL DE JESUS HUARTE** and **RAMON FONSECA**, recruited S.G. and F.C. to serve as nominee or "straw" owners of medical clinics in Louisiana, and to sign the necessary corporate records, bank records, and other business documents.

7.     **MICHEL DE JESUS HUARTE, RAMON FONSECA,** Vicente Gonzalez and S.G. incorporated or caused the incorporation of Fast Cure in Metairie, Louisiana.

8.     **MICHEL DE JESUS HUARTE, RAMON FONSECA,** Vicente Gonzalez and F.C. incorporated or caused the incorporation of Best Cure in New Orleans, Louisiana.

9.     **MICHEL DE JESUS HUARTE, RAMON FONSECA, ALYD DAZZA, RICCO DAZZA,** and Monika Blacio agreed to open medical clinics in North Carolina and South Carolina to defraud Medicare.

10.    **RICCO DAZZA,** based on his understanding and agreement with **MICHEL DE JESUS HUARTE** and **ALYD DAZZA,** recruited **ORLIN TAMAYO** to serve as nominee or "straw" owner of the medical clinics in North Carolina and South Carolina, and to sign the necessary corporate records, bank records, and other business documents.

11.    **RICCO DAZZA,** Monika Blacio and **ORLIN TAMAYO QUINONEZ,** acting at the direction of **MICHEL DE JESUS HUARTE** and **ALYD DAZZA,** travelled to South Carolina to incorporate Magestic Service, and to North Carolina to incorporate Ziallet Services.

12.    **RICCO DAZZA,** Monika Blacio and **ORLIN TAMAYO QUINONEZ,** acting at the direction of **MICHEL DE JESUS HUARTE** and **ALYD DAZZA,** travelled to South

16

Carolina and North Carolina to open multiple corporate bank accounts and to rent multiple mailboxes for Magestic Service and Ziallet Services, respectively.

13. **MICHEL DE JESUS HUARTE, RAMON FONSECA,** and their conspirators agreed to open medical clinics in Georgia to defraud the Medicare program.

14. **MICHEL DE JESUS HUARTE, RAMON FONSECA,** and their conspirators recruited J.G. to serve as serve as the nominee or "straw" owner of First Choice and Bibb Services in Georgia, and to sign the necessary corporate records, bank records, and other business documents for both companies.

15. **MICHEL DE JESUS HUARTE, RAMON FONSECA,** and their conspirators recruited **JUAN CARRALERO** to serve as the nominee or "straw" owner of Comprehensive Medical and Best Care in Georgia, and to sign the necessary corporate records, bank records, and other business documents for both companies.

16. **DAYRON PORRATA** on multiple occasions requested that W.P. access the computer system at SSC in order to obtain the personal identifying information of Medicare Advantage beneficiaries residing in various states, including Georgia, Louisiana, North Carolina, and South Carolina.

17. W.P. obtained and printed out the names, HICNs, and other personal identification information of numerous Medicare Advantage beneficiaries residing in Georgia, Louisiana, North Carolina, and South Carolina, thereby exceeding his authorized access to the computer system at SSC.

18. W.P. and **DAYRON PORRATA** met at various pre-determined locations, including parking lots and gas stations, where W.P. delivered to **PORRATA** the computer printouts containing the personal identifying information of Medicare Advantage beneficiaries.

19.     **DAYRON PORRATA** made cash payments to W.P. as compensation for providing the computer printouts containing the personal identifying information of Medicare Advantage beneficiaries.

20.     **DAYRON PORRATA** transferred, either directly or indirectly, the computer printouts containing the personal identifying information of Medicare Advantage beneficiaries, to **MICHEL DE JESUS HUARTE, RAMON FONSECA,** and other conspirators known and unknown to the Grand Jury.

21.     **MICHEL DE JESUS HUARTE, RAMON FONSECA,** and their conspirators utilized the computer printouts containing the names, HICNs, and other personal identifying information of Medicare Advantage beneficiaries residing in Louisiana, Georgia, North Carolina, South Carolina, and Georgia to facilitate the submission of false and fraudulent claims to Medicare and Medicare Advantage plans.

22.     **MICHEL DE JESUS HUARTE, RAMON FONSECA,** and their conspirators misappropriated the names and NPIs of multiple physicians, thereby facilitating the submission of false and fraudulent claims to Medicare and Medicare Advantage plans.

23.     **MICHEL DE JESUS HUARTE, RAMON FONSECA,** and their conspirators submitted and caused the submission of false and fraudulent claims to Medicare and to various Medicare Advantage plans on behalf of the medical clinics indicated below, seeking at least the amounts indicated below as reimbursement for injection treatments, intravenous infusion treatments, and other medical items and services which were neither ordered by a physician nor provided to any beneficiary as claimed. Based on these false and fraudulent claims, Medicare and Medicare Advantage plans paid the medical clinics at least the following amounts:

18

| Purported Medical Clinic | Approximate Amount Submitted to Medicare and Medicare Advantage Plans | Approximate Amount Paid By Medicare and Medicare Advantage Plans |
|---|---|---|
| Fast Cure | $1,713,268 | $57,624 |
| Best Cure | $2,531,387 | $247,503 |
| Magestic Service | $808,327 | $441,796 |
| Ziallet Services | $3,541,262 | $1,634,469 |
| First Choice | $2,686,279 | $452,382 |
| Bibb Services | $5,801,609 | $597,237 |
| Comprehensive Medical | $1,719,723 | $761,635 |
| Best Care | $999,569 | $405,032 |

24.     Vicente Gonzalez would retrieve checks that were delivered to Fast Cure and Best Cure by Medicare Advantage plans, based on his understanding and agreement with **MICHEL DE JESUS HUARTE** and **RAMON FONSECA**.

25.     Vicente Gonzalez would deliver to **MICHEL DE JESUS HUARTE** and **RAMON FONSECA** in Miami the checks made payable to Fast Cure and Best Cure by Medicare Advantage plans.

26.     **RICCO DAZZA**, Monika Blacio and **ORLIN TAMAYO QUINONEZ**, acting upon instructions from **MICHEL HUARTE** and **ALYD DAZZA**, travelled from Miami to North Carolina and South Carolina on multiple occasions to retrieve checks that were delivered to the rented mailboxes of Magestic Service and Ziallet Services by Medicare Advantage plans.  **RICCO DAZZA**, Monika Blacio and **ORLIN TAMAYO QUINONEZ** would then deposit such checks into the corporate bank accounts for Magestic Service and Ziallet Services.

27.     **ORLIN TAMAYO QUINONEZ**, acting at the direction of **RICCO DAZZA** and

19

Monika Blacio, would pre-sign blank checks to be drawn on the bank accounts of Magestic Service and Ziallet Services.

28.    **RICCO DAZZA** and Monika Blacio would deliver to **MICHEL DE JESUS HUARTE** the blank, pre-signed corporate checks drawn upon the bank accounts of Magestic Service and Ziallet Services.

29.    **MICHEL DE JESUS HUARTE** and **RAMON FOSECA**, with the assistance of **ALYD DAZZA** at Universal Moneyfast, would cash numerous checks made payable to First Choice, Bibb Services, Comprehensive Medical, Best Care, Fast Cure, and Best Cure.

30.    **MICHEL DE JESUS HUARTE** and **RAMON FONSECA**, with the assistance of **ALYD DAZZA** and Monika Blacio at Rapid Trans Solutions, would cash insurance company checks made payable to First Choice.

31.    **MICHEL DE JESUS HUARTE, RAMON FONSECO,** and their conspirators would distribute, and cause the distribution of, the cash proceeds to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 3-10**
**Health Care Fraud**
**(18 U.S.C. § 1347)**

1.    Paragraphs 1 through 3, 9 through 15, and 22 through 42 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2.    From at least as early as September 2007, and continuing through in or around May 2009, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MICHEL DE JESUS HUARTE and**

20

**RAMON FONSECA,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, that is, the defendants submitted and caused the submission of false and fraudulent claims to Medicare and Medicare Advantage plans for the cost of injection treatments, intravenous infusion treatments, and other medical goods and services.

### Purpose of the Scheme and Artifice

3.      It was a purpose of the scheme and artifice for the defendants to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare and Medicare Advantage plans; (b) concealing the submission of false and fraudulent claims to Medicare and Medicare Advantage plans; (c) concealing the receipt of the fraud proceeds; and (d) diverting the fraud proceeds for their personal use and benefit.

### The Scheme and Artifice

The manner and means by which the defendants sought to accomplish the purpose of the scheme and artifice included, among other things:

4.      **MICHEL DE JESUS HUARTE, RAMON FONSECA,** and others agreed to open sham medical clinics in Louisiana, North Carolina, South Carolina, and Georgia to defraud Medicare and Medicare Advantage programs.

5.      **MICHEL DE JESUS HUARTE, RAMON FONSECA,** and others incorporated and caused the incorporation of Fast Cure and Best Cure in Louisiana; Magestic Service in South

21

Carolina; Ziallet Services in North Carolina; and First Choice, Bibb Services, Comprehensive Medical and Best Care in Georgia.

6. **MICHEL DE JESUS HUARTE** and **RAMON FONSECA**, either directly or through accomplices, recruited nominee or "straw owners" who signed the necessary corporate records, bank records, and business documents for the sham medical clinics.

7. **MICHEL DE JESUS HUARTE, RAMON FONSECA**, and others caused the nominee or "straw owners" to open corporate bank accounts and to rent mailboxes for the sham medical clinics.

8. **MICHEL DE JESUS HUARTE, RAMON FONSECA**, and their accomplices misappropriated the names, HICNs, and other personal identifying information of numerous Medicare Advantage beneficiaries residing in Louisiana, North Carolina, South Carolina, and Georgia, thereby facilitating the submission of false and fraudulent claims to Medicare and Medicare Advantage plans.

9. **MICHEL DE JESUS HUARTE, RAMON FONSECA**, and their accomplices misappropriated the names and NPIs of multiple physicians, thereby facilitating the submission of false and fraudulent claims to Medicare and Medicare Advantage plans.

10. **MICHEL DE JESUS HUARTE, RAMON FONSECA**, and their accomplices submitted and caused the submission of false and fraudulent claims to Medicare and to various Medicare Advantage plans seeking reimbursement for injection treatments, intravenous infusion treatments, and other medical items and services which were neither ordered by a physician nor provided to any beneficiary as claimed.

11. **MICHEL DE JESUS HUARTE** and **RAMON FOSECA,** with the assistance of accomplices at Universal MoneyFast at Rapid Trans Solutions, would cash checks made payable

to First Choice, Bibb Services, Comprehensive Medical, Best Care, Fast Cure, and Best Cure.

12.    **MICHEL DE JESUS HUARTE, RAMON FONSECO,** and their accomplices would distribute, and cause the distribution of, the cash proceeds to themselves and others.

**Acts in Execution or Attempted Execution of the Scheme and Artifice**

13.    On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program:

| Count | Approx. Claim Date or Service Date | Medicare Advantage Plan or Provider | Medical Clinic | Beneficiary | Claim Number or Identifier | Item Claimed | Claimed Amount |
|---|---|---|---|---|---|---|---|
| 3 | 09/09/08 | Humana | Comprehensive Medical | S.S. | 370821705 | Injection Infliximab 10MG | $6,618 |
| 4 | 09/17/08 | Humana | Best Care | M.S. | 372487752 | Injection Infliximab 10MG | $4,964 |
| 5 | 10/02/08 | Coventry | Best Cure | A.A. | 12782293 | Injection, Octreotide, Depot Form For Intramuscular Injection, 1 MG | $4,671 |
| 6 | 10/04/08 | Coventry | Fast Cure | S.D. | 12751280 | Injection, Cidofovir, 375 MG | $1,142 |
| 7 | 10/21/08 | Aetna | Bibb Services | W.W. | 081021E2047100 | Corticoptropin Up to 40u/1mx | $7,050 |

23

| Count | Approx. Claim Date or Service Date | Medicare Advantage Plan or Provider | Medical Clinic | Beneficiary | Claim Number or Identifier | Item Claimed | Claimed Amount |
|---|---|---|---|---|---|---|---|
| 8 | 11/10/08 | Humana | First Choice | S.G. | 383988350 | Injection Corticotropin Up to 40 Units | $7,052 |
| 9 | 11/25/08 | Wellpoint | Magestic Group | T.W. | 090842092 | Inj Octreotide Depot Form IM Inj 1 | $3,635 |
| 10 | 03/23/09 | Healthnet | Ziallet Services | S.B. | E099096247H000 | Rituxan, 100MG | $7,810 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## Count 11
## Money Laundering Conspiracy
## (18 U.S.C. § 1956(h))

Beginning at least as early as May 2008, and continuing through in or around May 2009, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MICHEL DE JESUS HUARTE,
RAMON FONSECA,
VICENTE GONZALEZ,
ALYD DAZZA,
RICCO DAZZA, and
MONIKA BLACIO,**

did knowingly combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to commit an offense against the United States in violation of Title 18, United States Code, Section 1957, that is, did knowingly engage and attempt to engage in a monetary transaction affecting interstate and foreign commerce, such transaction involving criminally derived property of a value greater than $10,000, and such property having been derived from specified unlawful activity.

24

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 12-16**
**Money Laundering**
**(18 U.S.C. § 1957)**

On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MICHEL DE JESUS HUARTE and**
**RAMON FONSECA,**

did knowingly engage and attempt to engage in the identified monetary transactions affecting interstate commerce, such transactions involving criminally derived property of a value greater than $10,000, and such property having been derived from specified unlawful activity:

| Count | Approx. Date of Monetary Transaction | Description of Monetary Transaction |
|-------|--------------------------------------|-------------------------------------|
| 12 | 11/21/2008 | The deposit of Best Cure check number 1174, made payable to In Excess LLC, in the approximate amount of $16,933, into the corporate bank account of Universal Money Fast, Peoples Credit Union account number xxxxxx7000. |
| 13 | 11/26/2008 | The deposit of Best Cure check number 1172, made payable to Elusive Quality LLC, in the approximate amount of $25,918, into the corporate bank account of Universal Money Fast, Peoples Credit Union account number xxxxxx7000. |
| 14 | 11/28/2008 | The deposit of Best Cure check number 1171, made payable to High Speed Access Co., in the approximate amount of $15,471, into the corporate bank account of Universal Money Fast, Peoples Credit Union account number xxxxxx7000. |

| Count | Approx. Date of Monetary Transaction | Description of Monetary Transaction |
|-------|--------------------------------------|-------------------------------------|
| 15 | 12/12/2008 | The deposit of Fast Cure check number 1044, made payable to Strong Hope Company LLC, in the approximate amount of $14,751, into the corporate bank account of Universal Money Fast, Peoples Credit Union account number xxxxxx7000. |
| 16 | 02/06/2009 | The deposit of First Choice check number 1024, made payable to Strong Hope Company LLC, in the approximate amount of $26,351, into the corporate bank account of Rapid Trans Solutions, Peoples Credit Union account number xxxxxx7429. |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United Stated Code, Sections 1349 and 1347.

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS 17-20
## AGGRAVATED IDENTITY THEFT
### (18 U.S.C. § 1028A)

On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### MICHEL DE JESUS HUARTE and
### RAMON FONSECA,

during and in relation to a felony violation of Title 18, United States Code, Section 1347 (health care fraud), knowingly transferred, possessed, and used, without lawful authority, means of identification of another person, that is, a physician's UPIN, in that they submitted claims to Medicare for approximately the identified dollar amounts, and represented that, on or about the identified dates of service, the identified medical clinics had provided the identified injection treatments, intravenous infusion treatments, and other medical goods and services to Medicare beneficiaries pursuant to the identified physician's orders or prescriptions:

26

| Count | Approx. Claim Date | Medical Clinic | Physician | UPIN (Last 3 Digits) | Claim Number | Purported Service Date | Item Claimed | Claimed Amount |
|---|---|---|---|---|---|---|---|---|
| 17 | 07/10/08 | Bibb Services | K.C. | 382 | 1808192016682 | 05/02/08 | Cytomegalovirus imm IV /vial | $1,940 |
| 18 | 07/10/08 | Bibb Services | K.C. | 382 | 1108191673840 | 04/28/08 | Corticotropin injection | $2,400 |
| 19 | 07/28/08 | First Choice | K.C. | 382 | 1108210780440 | 05/03/08 | Octreotide Injection, depot | $4,740 |
| 20 | 07/28/08 | First Choice | K.C. | 382 | 1108210780400 | 05/03/08 | Injection therapy of veins | $5,000 |

In violation of Title 18, United States Code, Sections 1028A and 2.

## COUNT 21
### Conspiracy to Commit Fraud in Connection with Computers
### (18 U.S.C. § 1030(b) and (c)(2)(B)(i))

1.  Paragraphs 32, 39, and 40 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2.  From in or around August 2008, and continuing through in or around April 2009, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**DAYRON PORRATA,**

did knowingly and willfully combine, conspire, confederate and agree with W.P. to intentionally access a computer without authorization and to exceed authorized access, and thereby obtain information from a protected computer for purposes of commercial advantage and private financial gain, in violation of Title 18, United States Code, Sections 1030(b) and (c)(2)(B)(i).

27

## COUNTS 22-26
## Aggravated Identity Theft
## (18 U.S.C. § 1028A(a)(1))

1.  Paragraphs 32, 39, and 40 of the General Allegations section of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2.  On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the identified defendant, during and in relation to a felony violation of Title 18, United States Code, Section 1030(b), did knowingly possess and use, without lawful authority, a means of identification of another person, to wit, names and HICNs obtained from SSC, as set forth in each individual count below:

| Count | Defendant(s) | Approx. Date | Initials of Medicare Advantage Beneficiary | HICN (Last 4 Digits) |
|---|---|---|---|---|
| 22 | **DAYRON PORRATA** **WALLY PROENZA** | 08/29/2008 | L.G. | 834A |
| 23 | **DAYRON PORRATA** | 11/04/2008 | M.B. | 901A |
| 24 | **DAYRON PORRATA** | 12/10/2008 | D.F. | 394M |
| 25 | **DAYRON PORRATA** | 12/10/2008 | S.B. | 422A |
| 26 | **DAYRON PORRATA** | 12/10/2008 | T.H. | 844A |

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## FORFEITURE
## (18 U.S.C. § 982)

1.     The allegations contained in this Superseding Indictment with the exception of Paragraphs 17 through 20, and Paragraphs 22 through 26, are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **MICHEL DE JESUS HUARTE, RAMON FONSECA, ALYD DAZZA, RICCO DAZZA, DAYRON PORRATA, WALLY PROENZA, ORLIN TAMAYO QUINONEZ,** and **JUAN CARRALERO** have an interest

28

pursuant to the provisions of Title 18, United States Code, Sections 982(a)(7), 982(a)(1), and 982(a)(2).

2.      Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of **MICHEL DE JESUS HUARTE, RAMON FONSECA, ALYD DAZZA, RICCO DAZZA, DAYRON PORRATA, ORLIN TAMAYO QUINONEZ,** and **JUAN CARRALERO** for the offenses charged in Counts 1 through 10 of this Superseding Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s).

3.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of **MICHEL DE JESUS HUARTE, RAMON FONSECA, ALYD DAZZA**, and **RICCO DAZZA** for the offenses charged in Counts 11 through 16 of this Superseding Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property.

4.      Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of **DAYRON PORRATA** for the offense charged in Count 21 of this Superseding Indictment, the defendants shall forfeit to the United States any property, real or personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

5.      The property subject to forfeiture includes but is not limited to:

(a)      Gross proceeds of the fraud in the amount of at least $26,111,060;

(b)      Funds involved in or traceable to the money laundering in the approximate amount of $6,922,748;

(c)      Peoples Credit Union account number 0000897000 controlled by or on behalf of Universal MoneyFast, Inc. by defendant **ALYD DAZZA**;

29

(d)     Wachovia Bank account number 2000034262236 controlled by or on behalf of Universal MoneyFast, Inc. by defendant **ALYD DAZZA**;

(e)     Peoples Credit Union account number 0000897429 controlled by or on behalf of Rapid Trans Solutions, Inc. by defendants **ALLYD DAZZA, RICCO DAZZA**, and others;

(f)     SunTrust bank account number 1000074329516 controlled by or on behalf of Ziallet Services Inc. by defendants **ORLIN TAMAYO QUINONEZ, RICCO DAZZA, ALYD DAZZA**, and others;

(g)     Fifth Third Bank account numbers 7470334595 and 7470334579 controlled by or on behalf of Ziallet Services Inc. by defendants **ORLIN TAMAYO QUINONEZ, RICCO DAZZA, ALYD DAZZA**, and others;

(h)     BB&T Bank account numbers 0005103855057 and 0005103855049 controlled by or on behalf of Ziallet Services Inc. by defendants **ORLIN TAMAYO QUINONEZ, RICCO DAZZA, ALYD DAZZA**, and others;

(i)     Wachovia Bank account number 2000037144908 controlled by or on behalf of Magestic Group Service, Inc, by Defendants **ORLIN TAMAYO QUINONEZ, RICCO DAZZA, ALYD DAZZA**, and others;

(j)     Carolina First Bank account numbers 7101344415 and 7101950515 controlled by or on behalf of Magestic Group Service, Inc., by Defendants **ORLIN TAMAYO QUINONEZ, RICCO DAZZA, ALYD DAZZA**, and others;

(k)     The Palmetto Bank account numbers 051137585 and 051137593 controlled by or on behalf of Magestic Group Service, Inc., by Defendants **ORLIN TAMAYO QUINONEZ, RICCO DAZZA, ALYD DAZZA**, and others;

(l)     Bank of America account number 3340 0322 8574 controlled by or on behalf of Bibb Group Service, Inc., by Defendants **MICHEL DE JESUS HUARTE, RAMON FONSECA**, and their conspirators.

(m)    Wachovia Bank account number 2000036997838 controlled by or on behalf of First Choice Group Services, Inc., by Defendants **MICHEL DE JESUS HUARTE, RAMON FONSECA**, and their conspirators; and

(n)    Bank of America account number 003348108963 controlled by or on behalf of Comprehensive Medical Care Services, Inc. by Defendants **MICHEL DE JESUS HUARTE, RAMON FONSECA**, and their conspirators.

6.      If the property described above as being subject to forfeiture, as a result of any act or omission of **MICHEL DE JESUS HUARTE, RAMON FONSECA, ALYD DAZZA, RICCO DAZZA, DAYRON PORRATA, WALLY PROENZA, ORLIN TAMAYO QUINONEZ**, and **JUAN CARRALERO**

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to or deposited with a third party;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be subdivided without difficulty;

31

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as made applicable through Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of **MICHEL DE JESUS HUARTE, RAMON FONSECA, ALYD DAZZA, RICCO DAZZA, DAYRON PORRTA, WALLY PROENZA, ORLIN TAMAYO QUINONEZ**, and **JUAN CARRALERO,** up to the value of the above forfeitable property.

These forfeitable substitute properties include, but are not limited to, the following:

(a)     The residence located at 7245 South Prestwick Place, Miami, Florida 33014;

(b)     The condominium located at 7540 N.W. 176 Terrace, Miami, Florida 33015;

(c)     The condominium located at 7552 N.W. 177 Street, Miami, Florida, 33015;

(d)     The commercial property located at 2678 West 77th Place, Hialeah, Florida; and

(e)     The property located at 203 North Wallace Avenue, Lehigh Acres, Florida 33971;

All pursuant to Title 18, United States Code, Section 982 and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
FOREPERSON

_____
JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

_____
RYAN K. STUMPHAUZER
ASSISTANT UNITED STATES ATTORNEY

33

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| vs. | |
| MICHEL DE JESUS HUARTE *et al.,* | **CERTIFICATE OF TRIAL ATTORNEY*** |
| Defendants. | Superseding Case Information: 09-CR-20523-SEITZ(s) |

**Court Division:** (Select One)

New Defendant(s)  Yes __x__  No _____
Number of New Defendants ____2____
Total number of counts ____26____

| | |
|---|---|
| __x__ Miami | _____ Key West |
| _____ FTL | _____ WPB _____ FTP |

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:      (Yes or No)    __Yes__
    List language and/or dialect    __Spanish_____

4.  This case will take    __30__  days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                                    (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | | _____ |
| II | 6 to 10 days | _____ | Minor | | _____ |
| III | 11 to 20 days | _____ | Misdem. | | _____ |
| IV | 21 to 60 days | __x__ | Felony | | __x__ |
| V | 61 days and over | _____ | | | |

6.  Has this case been previously filed in this District Court? (Yes or No)    __Yes__
    If yes:
    Judge: __Seitz_____    Case No.    __09-CR-20523-SEITZ_____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?    (Yes or No)    __Yes__
    If yes:
    Magistrate Case No.    __09-2617-RLD_____
    Related Miscellaneous numbers: _____
    Defendant(s) in federal custody as of  V. Gonzalez (5/12/09); M. Huarte (6/29/09), A. Dazza and R. Dazza (7/7/09), M. Blacio (7/8/09)
    Defendant(s) in state custody as of _____
    Rule 20 from the    _____    District of    _____

    Is this a potential death penalty case? (Yes or No)    __No__

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    _____ Yes    __x__ No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    _____ Yes    __x__ No

_____
RYAN K. STUMPHAUZER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0012176

*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: **MICHEL DE JESUS HUARTE**

**Case No**: _____

Count #: 1

  Conspiracy to Commit Health Care Fraud

  Title 18, United States Code, Section 1349

  **\*Max.Penalty**:   Ten years' imprisonment

Count #: 2

  Conspiracy to Commit Health Care Fraud

  Title 18, United States Code, Section 1349

  **\*Max.Penalty**:   Ten years' imprisonment

Counts #: 3 - 10

  Health Care Fraud

  Title 18, United States Code, Section 1347

  **\*Max.Penalty**:   Ten years' imprisonment per count

Count #: 11

  Conspiracy to Commit Money Laundering

  Title 18, United States Code, Section 1956(h)

  **\*Max.Penalty**:   Ten years' imprisonment

Counts #: 12-16

Money Laundering

Title 18, United States Code, Section 1957

**\*Max.Penalty**:   Ten years' imprisonment per count

Counts #: 17-20

Aggravated Identity Theft

Title 18, United States Code, Section 1028A(a)(1)

**\*Max.Penalty**:   Two years' imprisonment per count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **RAMON FONSECA**

**Case No**: _____

Count #: 2

  Conspiracy to Commit Health Care Fraud

  Title 18, United States Code, Section 1349

  **\*Max.Penalty**:   Ten years' imprisonment

Counts #: 3 - 10

  Health Care Fraud

  Title 18, United States Code, Section 1347

  **\*Max.Penalty**:   Ten years' imprisonment per count

Count #: 11

  Conspiracy to Commit Money Laundering

  Title 18, United States Code, Section 1956(h)

  **\*Max.Penalty**:   Ten years' imprisonment

Counts #: 12-16

  Money Laundering

  Title 18, United States Code, Section 1957

  **\*Max.Penalty**:   Ten years' imprisonment per count

Counts  #: 17-20

  Aggravated Identity Theft

  Title 18, United States Code, Section 1028A(a)(1)

 **\*Max.Penalty**:   Two years' imprisonment per count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

2

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **ALYD DAZZA**

**Case No**:

Count #: 2

  Conspiracy to Commit Health Care Fraud

  Title 18, United States Code, Section 1349

 **\*Max.Penalty**:  Ten years' imprisonment

Count #: 11

  Conspiracy to Commit Money Laundering

  Title 18, United States Code, Section 1956(h)

 **\*Max.Penalty**:  Ten years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **RICCO DAZZA**

**Case No**: _____

Count #: 2

  Conspiracy to Commit Health Care Fraud

  Title 18, United States Code, Section 1349

  **\*Max.Penalty**:  Ten years' imprisonment

Count #: 11

  Conspiracy to Commit Money Laundering

  Title 18, United States Code, Section 1956(h)

  **\*Max.Penalty**:  Ten years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: **DAYRON PORRATA**

**Case No**:

Count  #: 2

  Conspiracy to Commit Health Care Fraud

  Title 18, United States Code, Section 1349

 **\*Max.Penalty**:   Ten years' imprisonment

Count  #: 21

  Conspiracy to Commit Fraud in Connection With Computers

  Title 18, United States Code, Section 1030(b) and (c)(2)(b)(i)

 **\*Max.Penalty**:   Five years' imprisonment

Counts  #: 22-26

  Aggravated Identity Theft

  Title 18, United States Code, Section 1028A(a)(1)

 **\*Max.Penalty**:   Two years' imprisonment per count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable**.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **WALLY PROENZA**

**Case No**: _____

Count #: 22

  Aggravated Identity Theft

   Title 18, United States Code, Section 1028A(a)(1)

**\*Max.Penalty**:   Two years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable**.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **ORLIN TAMAYO QUINONEZ**

**Case No**: _____

Count #: 2

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

*Max.Penalty: Ten years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **JUAN CARRALERO**

**Case No**: _____

Count #: 2

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\*Max.Penalty**:   Ten years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**